JOE K. SWISHER AND DOROTHY M. SWISHER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 69508. Filed December 16, 1959.

*Charles H. Rehm, Esq.*, for the petitioners.
*Leonard A. Hammes, Jr., Esq.*, for the respondent.

ATKINS, *Judge:* The respondent determined a deficiency in income tax of the petitioners for the year 1952 in the amount of $438.50.

The question presented is whether, in computing, under section 172 of the Internal Revenue Code of 1954, a net operating loss for 1954 which may be carried back to 1952, the respondent correctly held that an amount of $2,000 received by petitioner during 1954 as an installment payment under the General Motors Corporation bonus plan is income attributable to the petitioner's trade or business.

FINDINGS OF FACT.

Some of the facts are stipulated and are incorporated herein by this reference.

The petitioners are husband and wife who reside in Fredericktown, Missouri. They filed joint Federal income tax returns for the taxable years 1952 and 1954 with the district director of internal revenue in St. Louis, Missouri. Dorothy M. Swisher is a party to this proceeding only because she and her husband filed joint returns, and hereinafter Joe K. Swisher will be referred to as the petitioner.

For approximately 23 years, prior to January 15, 1950, the petitioner was employed in various positions by the General Motors Corporation. During the year 1949 the petitioner was the zone manager in Chicago, Illinois, for the Chevrolet Division of General Motors Corporation, and prior to that he was the national sales promotion manager for Chevrolet. While so employed by General Motors petitioner was eligible for bonuses from his employer. In some years the petitioner received a bonus while in others he did not. In 1949 petitioner was awarded a bonus of $10,000, which, commencing in 1950, he received in yearly installments of $2,000 per year. The last installment was received in January 1954.

On January 15, 1950, petitioner terminated his employment as zone manager for Chevrolet in Chicago, Illinois, and became a Chevrolet and Oldsmobile dealer in Fredericktown, Missouri.

The General Motors bonus plan under which the bonus to petitioner was paid provides in part as follows:

1. The purpose of this plan is to provide incentive and reward to employes who contribute to the success of the enterprise by their invention, ability, industry, loyalty or exceptional service, through making them participants in that success. * * *

\*     \*     \*     \*     *     \*     \*

4. Full power and authority to construe, interpret and administer this plan shall be vested in the Bonus and Salary Committee as from time to time constituted pursuant to the By-Laws of the Corporation. Decisions of the Committee shall be final, conclusive and binding upon all parties, including the Corporation, the stockholders and the employes, provided, however, that the Committee shall rely upon and be bound by the amount of net earnings, the amount of net capital, the maximum amount which may be credited to the bonus reserve, the total amount available in the reserve, and the value of stock for award purposes, all as reported by the independent public accountants.

\*     *     \*     *     \*     \*     \*

Upon final determination of bonus awards by the Committee, each award of $1,000 or less (cash or stock of equivalent award value) shall be paid at the time of award. Each award of more than $1,000 shall be paid in annual installments of 20% or $1,000, whichever is greater, the first such instalment at the time of award, and the remaining instalments in January of each succeeding year (until the full amount of the award is paid) if earned out by the beneficiary by continuing service with the Corporation, at the rate of $\frac{1}{12}$th of the amount of the first instalment for each complete month of service beginning with January of the year of the determination.

\*     \*     \*     \*     \*     \*     \*

7(b). With respect to bonus awards which become payable partly or wholly in cash, the amount of cash payable at the time of award shall be paid forthwith to the beneficiaries. The remaining cash shall be retained by the Corporation (without liability for interest) pending its being earned out by and paid to the beneficiaries at the times specified.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

8(a). A beneficiary whose employment terminates by dismissal for cause, of which the Bonus and Salary Committee shall be the sole judge, shall lose any right to earn out his unearned bonus awards.

A beneficiary who voluntarily terminates his employment shall have no right to earn out his unearned bonus awards, unless and to the extent the Bonus and Salary Committee, in its sole discretion, decides otherwise. In the event of such decision, the beneficiary may earn out his unearned bonus awards, provided that and for so long as such beneficiary, to the satisfaction of the Bonus and Salary Committee, refrains from engaging directly or indirectly in activities competitive with the activities of General Motors and from acting or conducting himself in a manner inimical or in any way contrary to the best interests of General Motors.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

9. If a beneficiary dies, his unpaid and undelivered bonus awards and dividend equivalents shall be paid and delivered to his legal representatives or to the persons entitled thereto as determined by a court of competent jurisdiction, at such times and in such manner as if the beneficiary were living.

In his return for the year 1954 the petitioner included the $2,000 in income. Such return shows the following:

Gross income:

| | |
|---|---:|
| Income from interest | $78.10 |
| Loss from business | (2,820.94) |
| Net long-term capital gain | 249.27 |
| Bonus—General Motors Corp. | 2,000.00 |
| Adjusted gross income | (493.57) |

Deductions:

| | | |
|---|---:|---:|
| Contributions | $488.00 | |
| Interest | 1,200.59 | |
| Taxes | 259.60 | |
| Total deductions | | 1,948.19 |

| | |
|---|---:|
| Net income | (2,441.76) |
| Exemptions | 1,800.00 |
| Taxable income | None |

The petitioner, in computing a net operating loss for 1954 which he claims as a proper deduction for 1952, treated the $2,000 payment under the General Motors bonus plan as nonbusiness income and therefore claimed that he was entitled to take into consideration nonbusiness deductions of $1,948.19. In the notice of deficiency the respondent determined that the nonbusiness deductions were in a lesser amount than claimed and further determined:

It is held that the amount, $2,000.00, received by Joe Swisher in the year 1954 as an installment payment under the General Motors Bonus Plan, represents business income and, therefore, may not be offset against nonbusiness deductions in computing the net operating loss carry-back to the year 1952.

## OPINION.

The question presented is whether the $2,000 bonus payment received by petitioner in 1954 is to be considered as gross income not derived by the petitioner from his trade or business for purposes of determining, under section 172(d)(4) of the Internal Revenue Code of 1954, the extent to which deductions not attributable to his trade or business may be taken into account in computing his net operating loss for 1954 to be carried back to 1952. Section 172(d)(4) limits the amount of nonbusiness deductions to the amount of the gross income which is not derived from the trade or business. Pertinent provisions of section 172 and the regulations thereunder are set forth in the margin.[1]

It is now well settled, not only by the regulations, but by decisions of this and other courts, that for the purposes of this section an employee is engaged in a trade or business and that the salary and wages received by him are derived from the operation of that business. *Anders I. Lagreide*, 23 T.C. 508; and *Elmer E. Batzell*, 30 T.C. 648, affd. (C.A. 4) 266 F. 2d 371. However, the petitioner contends that the bonus which he received is not to be considered as wages or salary,

---

[1] Section 172 of the 1954 Code, as it existed in the year 1954, provides in part as follows:

(b) NET OPERATING LOSS CARRYBACKS AND CARRYOVERS.—

(1) YEARS TO WHICH LOSS MAY BE CARRIED.—A net operating loss for any taxable year ending after December 31, 1953, shall be—

(A) a net operating loss carryback to each of the 2 taxable years preceding the taxable year of such loss, and

\* \* \* \* \* \*

(c) NET OPERATING LOSS DEFINED.—For purposes of this section, the term "net operating loss" means (for any taxable year ending after December 31, 1953) the excess of the deductions allowed by this chapter over the gross income. Such excess shall be computed with the modifications specified in subsection (d).

(d) MODIFICATIONS.—The modifications referred to in this section are as follows:

\* \* \* \* \* \* \*

(4) NONBUSINESS DEDUCTIONS OF TAXPAYERS OTHER THAN CORPORATIONS.—In the case of a taxpayer other than a corporation, the deductions allowable by this chapter which are not attributable to a taxpayer's trade or business shall be allowed only to the extent of the amount of the gross income not derived from such trade or business. \* \* \*

Sec. 1.172–3, Income Tax Regs. (26 C.F.R. 1.172–3), provides in part as follows:

(a). \* \* \*

\* \* \* \* \* \*

(3) *Nonbusiness deductions*—(i) *Ordinary deductions.*—Ordinary nonbusiness deductions shall be taken into account without regard to the amount of business deductions and shall be allowed in full to the extent, but not in excess, of that amount which is the sum of the ordinary nonbusiness gross income and the excess of nonbusiness capital gains over nonbusiness capital losses. See paragraph (c)(3) of this section. For purposes of section 172, nonbusiness deductions and income are those deductions and that income which are not attributable to, or derived from, a taxpayer's trade or business. Wages and salary constitute income attributable to the taxpayer's trade or business for such purposes.

and that even if it were so considered, it should not be considered business income for the year 1954 since it related to employment which ceased in 1950. In short, he contends that the only business carried on by him in 1954 was that of conducting an automobile dealership. He, therefore, contends that this bonus is, for present purposes, nonbusiness income and that consequently since it is in excess of the nonbusiness deductions which he claims, such nonbusiness expenses should be taken into consideration in computing the net operating loss pursuant to the terms of the statute.

We have set forth in some detail in the Findings of Fact the provisions of the General Motors Corporation bonus plan. Since the petitioner did continue to receive the installments under the bonus awarded to him in 1949, necessarily the bonus and salary committee must have decided that the petitioner had complied with all conditions necessary to "earn out his unearned bonus awards" within the meaning of the plan. Whether his operation of a General Motors dealership after leaving the employ of General Motors entered into the decision of the committee, or whether, as testified by the petitioner, all he had to do to "earn out" the bonus was to merely refrain from activities competitive with or inimical to General Motors, we consider immaterial for present purposes. We are satisfied that the bonus award was a part of compensation paid to him by General Motors. We think it is immaterial whether it be considered that his services as an employee of General Motors extended through the year 1954, or whether it be considered that the bonus constituted deferred compensation for services performed in prior years. In either event, we think, the income must be considered as income attributable to the petitioner's trade or business within the meaning of the statute. In our opinion income may be considered as income from the taxpayer's trade or business even though such business was not carried on in the year in question, so long as it is derived from a business which the petitioner had carried on in the past. In this connection see *Walter G. Morley*, 8 T.C. 904, where we took the position that for purposes of section 122(d)(5) of the Internal Revenue Code of 1939 (which corresponds to section 172(d)(4) of the 1954 Code), a loss sustained in one year may be considered as a loss from the operation of a business regularly carried on by the petitioner, where such business had been conducted in prior years, even though not carried on in the year in question.

Since, within the meaning of section 172(d)(4), the $2,000 bonus installment received in 1954 is not to be considered as "gross income not derived from such trade or business," it may not be offset by the petitioner's nonbusiness deductions for that year in computing his net operating loss.

*Decision will be entered for the respondent.*